**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SHIRLEY A. RENFRO, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER, SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>Defendant. ) | Case No. CIV-11-223-F |

**REPORT AND RECOMMENDATION**

Plaintiff, Ms. Shirley A. Renfro, seeks judicial review of a decision by the Social Security Administration to deny her applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI). This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

**I.    Introduction**

Ms. Renfro has a life-long history of mental and emotional stressors. At age five her father died. She had a childhood of sexual and emotional abuse from relatives and others. She dropped out of school at the eighth grade.

Ms. Renfro has no family support and her husband has been in prison for more than 20 years of the marriage. In August 2007 she injured her knee from a slip and fall while working as a nursing assistant at a nursing home. She had surgery to her knee as a result of

the injury and has not returned to work. Following the surgery, she received a disability rating of permanent partial impairment of 35% to the right knee. In addition to pain related to her knee injury, Ms. Renfro suffers from arthritis in her back and legs. She also suffers from depression and anxiety.

## II.     Procedural Background

Ms. Renfro filed her applications for DIB and SSI on May 30, 2008, alleging a disability onset date of August 28, 2007. Administrative Record [Doc. #12] (AR) 91-97, 98-101. The Social Security Administration denied her application initially and on reconsideration. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. AR 11-20. The Appeals Council denied Ms. Renfro's request for review. AR 1-5. This appeal followed.

## III.    The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ determined that Ms. Renfro had not engaged in substantial gainful activity since the alleged onset date. AR 13. At step two, the ALJ determined that Ms. Renfro has the following severe impairments: arthritis in the back and legs, knee problems, major depressive disorder and anxiety disorder. AR 13. At step three, the ALJ found that Ms. Renfro's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 14.

The ALJ next determined Ms. Renfro's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She can walk and/or stand (with normal breaks) for 6 hours of an 8-hour workday and sit (with normal breaks) for 6 hours of an 8-hour workday. Her residual functional capacity for light work is diminished by significant nonexertional limitations in that she has postural limitations of occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling. She can never climb ladders, ropes or scaffolds. Additionally, she experiences a moderate level of discomfort and fatigue affecting her ability to work in a competitive environment. She has mental impairments resulting in mild restriction of activities of daily living, mild to moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace.

AR 15.

At step four, the ALJ concluded that Ms. Renfro is unable to perform her past relevant work as a certified nurse aide and as a certified medication aide. AR 18. At step five, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Ms. Renfro could perform. AR 19-20.

## IV.  Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**V.      Issues Raised on Appeal**

Ms. Renfro raises the following issues on appeal:

1. The ALJ failed to find that Ms. Renfro's mental limitations reduced her RFC;

2. The ALJ's RFC is against the weight of the evidence;

3. The ALJ failed to develop the medical record;

4. The ALJ failed to explain the degree of weight he gave to a critical physician's opinion;

5. The ALJ failed to conduct a proper analysis of Mr. Renfro's pain symptoms;

6. The ALJ found Ms. Renfro lacked credibility without conducting a proper credibility analysis;

7. The ALJ employed the wrong test of Ms. Renfro's daily activities to deny her benefits; and

8. The ALJ improperly invalidated Ms. Renfro's disability request because she was claiming unemployment benefits.

## VI.     Analysis

### A.     Claims Related to the ALJ's Mental RFC Determination

Ms. Renfro's first three claims of error relate to the ALJ's mental RFC determination. Ms. Renfro claims the ALJ's mental RFC determination is not supported by substantial evidence, is against the clear weight of the evidence, and that the ALJ had a duty to further develop the record by obtaining a psychological consultative examination.

In cases where there is evidence of a mental impairment, Social Security regulations require the application of a psychiatric review "technique" (PRT) for determining whether there is a medically-determinable mental impairment and if so, whether that impairment is "severe." 20 C.F.R. §§ 404.1520a;  416.920a; *see Hill v. Sullivan*, 924 F.2d 972, 974–75 (10th Cir.1991).   At step two, the ALJ determined that Ms. Renfro has severe mental impairments of major depressive disorder and anxiety disorder.  AR 13.

The PRT "requires adjudicators to assess an individual's limitations and restrictions from mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the mental disorders listings."  Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *4.  At step three the ALJ determined the mental impairments, considered singularly or in combination, did not meet or equal the listings.  AR 14.  The ALJ addressed the "paragraph B" criteria of the listings and, relying primarily on Ms. Renfro's statements in her Function Report submitted as part of her application, determined she has mild restrictions in activities of daily living; moderate difficulties in social functioning; and mild difficulties with concentration persistence or pace.  AR 14.

"[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Soc. Sec. Rul. 96-8p, 1996 WL 374184 at * 4. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listings of Impairments and summarized on the PRTF." *Id.* "In assessing a claimant's mental RFC, the ALJ should consider, among other things, the claimant's ability to engage in the activities of daily living; to interact appropriately with the public, supervisors, and co-workers; to focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder." *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994) (*citing* 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.00(C)).

Contrary to the governing law, the ALJ did not conduct a more detailed assessment to determine Ms. Renfro's mental RFC. Instead, he mirrored the findings at step three and determined, at step four, Ms. Renfro's mental RFC. He found Ms. Renfro has "mild restrictions of activities of daily living, mild to moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence or pace." AR 15.

The ALJ summarized Ms. Renfro's treatment records from Central Oklahoma Community Health Center in support of his findings. Those treatment records cover the approximate six-month time period from December 23, 2008 through June 1, 2009. AR 191-

212. The ALJ referenced a diagnosis in January and February 2009, by Dr. Asha Raju – Ms. Renfro's treating psychiatrist – concerning her mental limitations. AR 17. The ALJ noted Dr. Raju had diagnosed Ms. Renfro with major depressive disorder, recurrent, moderate; dysthmic disorder; and rule out posttraumatic stress disorder. AR 17, 191. The ALJ further noted that Dr. Raju prescribed Ms. Renfro medication. AR 17. The ALJ then noted the following from Dr. Raju's treatment records:

> On February 2, 2009 she appeared sad and tearful. Her memory, concentration and attention were good. Her thought process was reality-based and her conversation was goal-directed. Her insight and judgment were adequate. On February 17, 2009 her assessment was "improved." On June 1, 2009 her mood was described as "okay" and she was assessed as "stable."

*Id*.

But the ALJ ignored other probative evidence from Dr. Raju's treatment records regarding Ms. Renfro's mental limitations. Notably, the ALJ ignored Mr. Renfro's Global Assessment of Functioning.[1] Dr. Raju consistently assigned Ms. Renfro's score at 48. AR 209, 210 (December 2008). AR 191 (February 2009); AR 212 ( May 21, 2009).[2] A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). "GAF scores of 50 or less do suggest an

---

[1] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004) (quotation omitted).

[2] Dr. Raju used the abbreviation LOF or "level of functioning" in assigning the GAF score.

7

inability to keep a job." *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. July 17, 2003) (unpublished op.); *see also Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004) (unpublished op.).  And, other evidence in the treatment records from Central Oklahoma Community Health Center suggests Ms. Renfro's difficulty keeping a job.  A clinician working with Dr. Raju made the following notation regarding Mr. Renfro's memory on February 5, 2009. "Shirley reports her memory is very erratic."  AR 195.  In addition the record shows she suffers from hallucinations and delusions. AR 208.  She also has problems with attention.  *Id.*  With respect to her social adaptive behavior, she is unable to adjust to community or peer situations. *Id*.

An ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability.  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).[3]  The ALJ's failure to discuss the probative evidence from Dr. Raju constitutes reversible error.

Ms. Renfro also claims the ALJ had a duty to develop the record and obtain a consultative psychological examination.   She claims the record contains very limited

---

[3]While the ALJ "is not required to discuss every piece of evidence" when making his decision, *see Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996), he is required to "discuss the uncontroverted evidence he [does] not [ ] rely upon, as well as the significantly probative evidence he rejects." *Id*. at 1010.

medical evidence regarding her mental impairments and that such an examination would be beneficial to the ALJ's mental RFC determination.

The Social Security regulations require documentation of the application of the PRT utilizing a "standard document" (PRT form) at both the "initial and reconsideration levels of the administrative review process." 20 C.F.R. §§ 404.1520a(e), 416.920a(e). At the administrative law judge and Appeals Council levels of review (in those cases where the Appeals Council issues a decision), a standard document is not required, but the application of the technique must be documented "in the decision." *Id.*; *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) (administrative law judge need no longer attach PRT form to decision). That is, any written decision issued by the administrative law judge or Appeals Council:

> must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(c)(4), 416.920a(e)(4).

Although not specifically raised by Ms. Renfro, significant to her claim that the ALJ had a duty to develop the record is the fact that the record is completely void of any PRT form or any physician-prepared mental RFC assessment.[4] Instead, the ALJ impermissibly

---

[4]As noted, the regulations require that a PRT form be completed at the initial and reconsideration levels of administrative review. It appears no such PRT form was obtained because Ms. Renfro did not apply for benefits based on any mental limitations. *See, e.g.*, AR 110. Ms.
(continued...)

relied on his own lay opinion to determine Ms. Renfro's functional limitations resulting from her mental impairments. *See, e.g. Schwartz v. Barnhart*, 70 Fed. Appx. 512, 518 (10th Cir. July 16, 2003) (unpublished op.) (ALJ impermissibly substituted his lay opinion for medical evidence where he based PRT conclusions on his own view of the evidence).[5] Without any PRT form or mental RFC assessment, the ALJ's determination of Ms. Renfro's mental functional abilities is not supported by substantial evidence and further development of the record is needed. *Compare Sanchez v. Apfel*, 2000 WL 376616 at *3 (10th Cir. April 13, 2000) (unpublished op.) (finding ALJ had duty to develop record where record showed claimant received treatment for major depression related to his back injury and noting that "the ALJ's duty to develop the record may have been heightened because there was no PRT in the record") *see also Fortner v. Astrue*, 2011 WL 1233300 at *3 (E.D. Okla. March 29, 2011) (unpublished op.) (remand required where ALJ did not "cite any physician-prepared mental RFC assessment (even one from a state agency physician) to support his own conclusory PRT findings").

---

[4](...continued)
Renfro did respond "yes" in her application, however, to the following question: "Have you ever been seen by a doctor/hospital/clinic or anyone else for emotional or mental problems that limit your ability to work?" AR 112.

[5]As stated, the absence of any PRT in the record is significant. The technique is intended to: "(1) [i]dentify the need for additional evidence to determine impairment severity; (2) [c]onsider and evaluate functional consequences of the mental disorder(s) relevant to [the claimant's] ability to work; and (3) [o]rganize and present [the Commissioner's] findings in a clear, concise, and consistent manner." 20 C.F.R. §§ 404.1520a(a)(1)-(3), 416.920a(1)-(3). The technique is essential to rating the degree of functional limitations the assessment of which is "a complex and highly individualized process." *Id*., §§ 404.1520a(c), 416.920a(c).

In sum, a remand is required for proper evaluation of Ms. Renfro's mental RFC. On remand, the ALJ must consider and discuss all evidence relied upon to form his mental RFC determination as well as probative evidence he rejects. In addition, the ALJ should supplement the record with the required PRT form and, if necessary, a mental RFC assessment completed as part of a consultative psychological examination.

### B.  The ALJ's Analysis of Dr. Rosson's Opinion

Ms. Renfro claims the ALJ did not properly evaluate the opinion of Dr. Rosson. According to Ms. Renfro, although the ALJ "considered" the opinion he did not "provide any explanation about the weight he gave to the opinion." *See* Plaintiff's Brief in Chief [Doc. #14] at 20.

The Commissioner responds that Dr. Rosson does not qualify as a treating physician, *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), and, therefore, the ALJ was not required to specify what weight he was giving to that opinion. Further, the Commissioner contends the ALJ's findings with respect to Ms. Renfro's impairments related to her knee are supported by substantial evidence in the record.

The Commissioner is correct that Dr. Rosson does not qualify as a treating physician. The opinion of a treating physician is entitled to particular weight based on a relationship of duration and frequency. *See Doyal v. Barnhart*, *supra*, 331 F.3d at 762; *see also Barker v. Shalala*, 40 F.3d 789, 794 (10th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant

than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.") (emphasis added).

The record shows that Dr. Rosson conducted a one-time examination of Ms. Renfro on February 5, 2008, for the purpose of a workers' compensation impairment rating. AR 169-171. He did not provide any further treatment thereafter. The treating physician rule, therefore, does not apply and the ALJ was not required to discuss the weight he gave to this opinion. *See Freeman v. Astrue*, 441 Fed. Appx. 571, 574 (10th Cir. Oct. 14, 2011) (unpublished op.) (ALJ not required to discuss weight given to opinion of doctors contacted as part of claimant's workers' compensation claim as doctors did not qualify as treating physicians); *McTaggert v. Astrue*, 342 Fed. Appx. 373, 375 (10th Cir. Aug. 17, 2009) (unpublished op.) (doctors who saw claimant only on a few occasions and solely in relation to workers' compensation claim were not treating physicians); *Roulston v. Shalala*, 1995 WL 41671 at * 2 (10th Cir. Feb. 3, 1995) (unpublished op.) (physicians who were "one-time examiners" and evaluated claimant solely for workers' compensation benefit purposes did not qualify as treating physicians).

Moreover, the record demonstrates the ALJ considered the medical evidence from Dr. Rosson as he specifically cited that evidence in his discussion. AR 16. The ALJ found Dr. Rosson's opinion to be probative but not determinative, noting that disability findings for workers' compensation benefits are not dispositive of the disability analysis for Social Security benefits. *Compare Baca v. Department of Health and Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) ("findings by other agencies are not binding on the Secretary" but "are

entitled to weight and must be considered") (citation omitted). Under these circumstances, Ms. Renfro has failed to demonstrate legal error with respect to the ALJ's analysis of Dr. Rosson's opinion.

### C.     The ALJ's Credibility Evaluation

Ms. Renfro's final four claims of error challenge the ALJ's credibility analysis. She contends the ALJ failed to properly evaluate her subjective complaints of pain; erred in finding her not credible; improperly relied on her daily activities to deny benefits; and improperly "invalidated" her claim for benefits based on her application for and receipt of unemployment compensation benefits.

"Credibility determinations are peculiarly the province of the finder of fact, and [the reviewing court] will not upset such determinations when supported by substantial evidence." *Diaz v. Sect'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). Factors the ALJ may consider in assessing a claimant's complaints include "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Id*.

### 1. *Luna* **Pain Analysis**

Ms. Renfro contends the ALJ failed to properly analyze her subjective complaints of pain because he did not follow the pain analysis required by the regulations and long-standing Tenth Circuit precedent as set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). Pursuant to *Luna*, a three-step analysis must be applied when considering a claimant's subjective complaints of pain. First, the ALJ must determine whether the objective medical evidence establishes a pain-producing impairment. Second, the ALJ must determine whether there is a "loose nexus" between the impairment and the claimant's subjective complaints of pain. And third, the ALJ must consider whether, considering all the evidence, both objective and subjective, the claimant's pain is disabling. *Id*. at 163-164.

The ALJ did not specifically cite *Luna* in the administrative decision. However, the ALJ discussed Mr. Renfro's complaints of pain following the surgery on her knee and that she has a hard time sitting due to her leg pain. AR 16. The ALJ then found that these were medically determinable impairments that could reasonably be expected to cause some of her pain symptoms. *Id*. Thereafter, the ALJ discussed the medical record and other evidence to evaluate whether Ms. Renfro's pain is disabling. AR 17. Ms. Renfro does not make any specific challenge to the ALJ's findings but instead bases her claim of error on the ALJ's alleged failure to conduct the *Luna* analysis. As set forth, the record belies Ms. Renfro's claim. The ALJ applied the *Luna* analysis and Ms. Renfro's claim of error should be denied.

### 2. Subjective Complaints of Pain Symptoms

In a related claim, Ms. Renfro contends the ALJ erroneously relied upon "boilerplate language" to conclude that her subjective complaints of pain are not credible. Ms. Renfro does not challenge any specific finding in support of this claim but contends it is the lack of any specific discussion of the evidence that constitutes error. As set forth with respect to Ms. Renfro's *Luna* challenge, the record belies this claim. The ALJ summarized the objective medical evidence, discussed Ms. Renfro's treatment (or lack thereof), her daily activities and the medication she was taking. The ALJ did not, therefore, rely on boilerplate language but reviewed the evidence and cited the evidence relied upon in assessing Ms. Renfro's credibility. This claim of error, therefore, should be denied.

### 3. Daily Activities

Ms. Renfro next claims the ALJ improperly relied on minimal daily activities to deny her benefits. The ALJ made the following findings regarding Ms. Renfro's daily activities: she takes care of her personal needs; she can make the bed, clean house and do laundry; she can cook simple meals; she reads and watches television; she drives a car and shops for food and personal items; she can take care of her finances; she visits with friends and plays card games or dominoes with them; and she goes to visit friends and to the store on a regular basis. AR 17.

The ALJ relied on the statements in the Function Report Ms. Renfro submitted in support of her application to determine her daily activities. AR 117-124.[6] In the Function Report, Ms. Renfro's reports of her daily activities are quite minimal. As for cooking, she prepares "sandwiches and frozen dinners." AR 119. Her cleaning is for ten minutes, daily. *Id*. She does laundry for two hours once every two weeks and sometimes requires the help of a friend. *Id*. She shops for food once every two weeks and for other items once per month. AR 120. She needs to be reminded to go places and gets out of the house to visit a friend or go to the store once or twice per week. AR 121.

It is proper for the ALJ to consider daily activities as part of the disability determination. Standing alone, however, evidence of only minimal daily activities is not sufficient to undercut a finding of disability. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004).

In addition to her daily activities, the ALJ also discounted Ms. Renfro's credibility on grounds she was not seeking medical treatment on a regular basis. As to her physical impairments, the record does not indicate Ms. Renfro continued to seek treatment for problems associated with her knee. But neither is there any indication from the record that Ms. Renfro could benefit from further medical treatment. This factor, therefore, weighs inconclusively. With respect to her mental impairments, contrary to the ALJ's finding, Ms.

---

[6]At the hearing before the ALJ, no testimony was received from Ms. Renfro regarding her daily activities.

Renfro testified at the hearing before the ALJ that she was receiving mental health counseling on a regular basis. AR 33.

The ALJ also relied on the fact that Ms. Renfro was not taking any "pain relieving medications on a consistent basis" to discount her credibility. AR 18. Yet, as the ALJ noted, Ms. Renfro was taking Flexeril for muscle spasms and Zantac for acid reflux – medications indicative of symptoms associated with her physical and mental impairments.

Finally, the ALJ cited the fact that Ms. Renfro had applied for and was receiving unemployment compensation benefits as grounds for discounting her credibility. This was a proper factor for the ALJ to consider, but as discussed below, the ALJ gave improper weight to this factor finding it "invalidated" her claim for disability. AR 17.

On the record presented, the ALJ's credibility findings are not supported by substantial evidence. As Ms. Renfro contends, her daily activities are quite minimal. The ALJ did consider additional factors, but the record is either inconclusive or does not substantiate the ALJ's findings as to these factors. His credibility findings are supported by, at best, a scintilla of the evidence, not substantial evidence as required. *See Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) ("[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it"). A remand, therefore, is required. On remand, testimony from Ms. Renfro about her daily activities, whether treatment is available to her, whether she can afford such

treatment[7] and the reasons for not taking pain medication (*e.g.*, adverse side effects; affordability) would be pertinent to the credibility determination.

### 4.     Unemployment Compensation Benefits

Regarding unemployment compensation benefits, the ALJ made the following finding:

> The claimant filed for unemployment in January 2008 and received unemployment checks until May 2009. In doing so, she presented herself as being ready, able and willing to work and she was looking for a job. This invalidates disability during this period of time and diminishes her credibility.

AR 17.

The ALJ's finding is legally erroneous. While it is proper to treat the fact of applying for unemployment compensation benefits as some evidence of a claimant's ability to work, that fact, without more, does not conclusively negate a claim of disability. *See Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991). *See also Kalishek v. Astrue*, 2011 WL 4389643 at * 5 (M.D. Fla. Aug. 23, 2011) (unpublished op.) ("Standing alone, the receipt of unemployment benefits does not disqualify a claimant from consideration for Social Security benefits" though "an ALJ may certainly consider a claimant's receipt of unemployment compensation in making a credibility determination.") (citations omitted).

---

[7]Ms. Renfro contends in the briefing that evidence in the record suggests she could not afford medical treatment. At the hearing before the ALJ, Ms. Renfro testified that she has friends that own a trailer and they permit her to live with them. AR 28. She also testified in response to questions by the ALJ about her application for unemployment benefits that she had "literally no income whatsoever" and "no way of paying bills." AR 31. She also testified that she "didn't even own a vehicle." *Id*. The record contains other indications of Ms. Renfro's inability to afford treatment. *See, e.g,* AR 197 ("Shirley does not have income due to her physical and mental needs therefore she is not able to have access to health care which is a large problem due to several physical needs."). On remand, the ALJ should consider Ms. Renfro's ability to pay for medical treatment and medication in assessing her credibility.

Here, the ALJ specifically determined that Ms. Renfro's receipt of unemployment compensation "invalidates disability" for the time period January 2008 through May 2009. To the extent the ALJ conclusively relied upon Ms. Renfro receipt of unemployment for the time period stated as a basis for denying benefits, his reliance constitutes legal error and requires a remand. On remand, the ALJ may consider the receipt of unemployment compensation as a factor in determining credibility, but may not use that fact as a sole basis for denying benefits.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by February 7th, 2012. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __17th__ day of January, 2012.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE